Welcome to everyone and thanks to the University of Colorado School of Law for having us to your fine facility and for the warm welcome you've given us. To all the students in the crowd, thanks for coming out. We really appreciate your interest in these cases and hope that we're able to provide everybody with an experience today that that's worth seeing. So with that, we'll go ahead and call the first case. Actually, these two cases are consolidated 23-4106 and 23-4107 Garfield County, Utah v. Biden and Dalton v. Biden. Counsel? Stanford Purser from the Utah Attorney General's Office on behalf of the state and county plaintiffs and appellants. Okay, can you while you go ahead and since you're the appellant we'll go ahead and let you take the we're going to go ahead and call your case but can you give us an idea so we have an hour set aside for this case 30 minutes per side with two lawyers per side. Has there been any discussion about how you're going to split up your time? Do you want to run your cases even though they're largely identical? Do you want to run them separately or do you want to just have 30 minutes per side and you lawyers decide how you're going to break up your time? I think we had anticipated just doing this case first and then the Dalton case second. Okay, anything from counsel for the appellees? John Beese for federal defense. Okay, all right well we'll go ahead and we'll let you be the master of your own case here. Go ahead and proceed. All right, as mentioned Stanford Purser from the Utah Attorney General's Office on behalf of the state and county plaintiffs. May it please the court I'd like to on your rebuttal I'm going to need you to watch your clock and and try to reserve your time and then the other thing is we're having a little trouble hearing you up here so if you can talk louder or adjust the mic. I'll try to lean over, thank you. The Antiquities Act expressly limits what and how much can be reserved as a national monument. As to the what, the designation can cover only historic landmarks, historic and prehistoric structures, and other objects of historic or scientific interest situated on federal land. As to the scope, the act says any additional land reserved for the monument quote shall be confined to the smallest area compatible with the proper care and management of the objects to be protected. Just three years ago Chief Justice Roberts lamented how these limits had ceased to pose any meaningful restraint. The act has somehow been transformed he said into a power without any discernible limits to set aside vast and amorphous expanses of terrain above and below the sea. He hoped that the Supreme Court would get a case where it could review these limits. This is such a case. Counsel speaking of past cases, has any court ever found a presidential proclamation designating a national monument to be unlawful or beyond the scope of the president's power? It has not. So what makes your case different that we should distinguish it from past cases where similar challenges have been raised? Well a few reasons. I'm not sure the arguments we raise have always been raised in the past and to the extent they have, courts have found that they weren't properly pled and dismissed on those grounds. But here we have a clear case of proclamations that exceed any reasonable interpretation of the Antiquities Act and the limits that I just meant. So you're invoking the ultra virus exception to sovereign immunity right? So where I'm having a little trouble is understanding how we're supposed to think about this at the threshold stage. It seems that the sovereign immunity question collapses with the merits question when the ultra virus exception is in the case. So how should we be thinking about the ultra virus exception to sovereign immunity at this procedural stage? Well it's a very good question and in fact the district court seemed, at least to a large extent, based his decision on the fact that oh I don't have any guidance on what this means therefore it's barred by sovereign immunity and we can't go forward with this ultra virus claim. But here in part because the district court said that, the court can and should interpret these limits within the Antiquities Act to confirm that Utah and the counties have stated a claim under the ultra virus doctrine and that in turn will provide the guidance that the district court says he needs to be able to proceed in this case. He sort of just threw up his hands and said I don't know what to do here. So is your position that the that the inquiry on the ultra virus exception and the actual merits question converge and should be decided by this court? That is our position. We think the briefing is before the court and the court would be able to do that to remand it to the district court either with our preference would be for the court just to decide that issue and say yes we have stated a claim and remand it on that ground. But even short of that to just provide the interpretation of the act that the district court says he doesn't have so the district court can then apply these standards to our complaint and determine for itself that yes the state and counties have stated a claim. So that would be unusual at least in our course of practice where a district court hasn't ruled as to any merits and just made a broad ruling that someone that there was no jurisdiction to hear the claim. If we disagreed with that we would normally send it back to the district court for the to handle in the first instance including questions about interpretation of the statute that may not have been addressed before. I mean there's generally not any ability or a practice of a district court to say well no appellate courts addressed this statute before so I'm not going to decide it. Once they decide it I'll have the ability to make a decision. I mean how do you agree you're sort of asking us to by stepping out in front of the things? No I agree that is the normal course but for the two reasons we've just discussed both Judge Rossman's question that the intertwined aspect of our ultravirus claim with the question of have we stated a claim and two the fact that the district court just explicitly said in his order I don't know what to do there's no higher court interpretation on this it's barred by sovereign immunity. Because he tied it that way it's clear if we go back and he doesn't have guidance on this I'm not sure how the result is going to be different. He's he's sort of made his ruling on that question and said given the state of the laws he sees it he's going to punt or decide we haven't stated a claim. So what is the kind of guidance that you would think is necessary? I suppose it would be the interpretation of the statute right? Yes. And what about whether there's a cause of action? Well again those two are intertwined but well actually look I'm sorry let me ask you one thing you say they're intertwined but I see them as intertwined in the sense that we don't know if the ultravirus exception to sovereign immunity applies unless we know there's been an ultravirus act and in that sense they're intertwined. The cause and that's jurisdictional right? Right. The cause of action question is not jurisdictional and but yet there needs to be a cause of action and you rely on RK Simot for that proposition? Yes among others there's in the D.C. circuit court also they've expressly held that an ultravirus claim can move forward in exactly these type that it is reviewable. So what is an ultravirus claim that's distinct from an ultravirus exception to sovereign immunity? Well again that gets back to the court's question if you answer one if you've stated an ultravirus claim then you've stated the exception to sovereign immunity and I think in this case but vice versa you have to well at least at the motion to dismiss stage our complaint thoroughly and comprehensively goes through dozens and dozens and dozens and pages of allegations about why the the items listed in the proclamation are not objects as properly defined in the statute and again even if they were or even if some of them were why 3.2 million acres is not the smallest area compatible with the care and management. We have made those claims very expressly and thoroughly in our complaint and for that reason that in the showing that these proclamations exceed the limit set forth in the Antiquities Act we have both stated a claim and stated the exception to the sovereign immunity bar. So you talk about there being 500 objects that or you don't agree they're all objects but 500 the proclamation declares them to be objects that that have been that have been reserved and do you expect that this court would go through your complaint and pass judgment on all 500 objects? Yeah no. I mean before the district court has ever made a determination as to the objects? No but if we were on say the merits of whether we prevail some court would need to do that but the posture of the case here is we're up on dismissal for a motion to dismiss so we've stated a claim if there's even one object. Well I as I understand the district court's order at least the district court took the position that no matter what's in the proclamation that there's sovereign immunity and it can be challenged. Right. So why I guess I'm just curious why you would want us to go further than to say that's wrong you district court have to look at it in the first instance and decide whether on the merits at least at the motion to dismiss stage these plaintiffs have stated a claim. Again it's because the district court here wouldn't do that he just said I've got no guidance on what these limits mean therefore I'm not going to move forward if we go down if it's remanded back to him without guidance I'm not sure what he does with that. Why does the guidance from us have to involve the object by object inquiry at this stage I mean wouldn't it be appropriate to construe the statute and if it's construed in favor of your position those would be the instructions to the district court. And we would totally accept that too. I thought as much but I'm really struggling with the cause of action aspect of this because even if we were to agree with your construction of the statute and I understand the rhetoric and I'm not suggesting anything bad about use that word but sort of the formulation of this ultra virus claim you still need a cause of action and we have the safe streets case that says you can't have this free floating right and I'm not understanding your reliance on how your reliance on CEMAT works here to establish a cause of action and would appreciate some help with that. Well and perhaps turning to the DC circuit they have as we outline in our brief they have expressly held that the ultra virus provides the means to review these sorts of claims. But the federal defendants distinguish the DC circuit and the 9th circuit cases on grounds that you're evaluating two statutes we're not just looking in those cases they weren't looking just at the antiquities act so why isn't that differences in those cases distinguish them in a way that here is we're just looking at the proclamations under the antiquities act not comparing that to any other federal action under a different statute I mean are those even comparable? Well two answers I think the first is I think they're misinterpreting those DC circuit cases there in some there may be two actions but I'll quote from American in their mountain states case for example the plaintiffs challenged the number of monument designations as statutorily ultra virus they they argued that the designations reach far beyond the purpose and the scope and the size of any national monument and were also contrary to various statutes so two so two claims there contrary to various statutes and in violation of the antiquities act and the court said we found both types of claims reviewable. That's not very helpful I mean it's not your fault that it's not helpful but it's not very it's what does that mean for for our purposes though because well go ahead I think it means one the court isn't saying here we're only allowing the antiquities ultra virus claim to go forward because there's also some other one they said both claims are reviewable and two I don't think it makes very much conceptual sense to say we're only going to look at or apply and enforce the limits in the antiquities act if you're also claiming a violation of some other act the antiquities act can stand on its own and if those limits are exceeded they can be reviewed there's no conceptual logical legal reason to say we're only going to enforce those limits if we're arguing about some other act too and I don't think that's consistent with with what the dc circuit is held and I would just add beyond the ultra ultra virus claim we also assert that there the sovereign immunity does not apply here because of section 702 of the administrative procedure act okay thank you counsel you're out of time all right Mr. Bynes are you going to try to use part of this time is that how this is working yeah I'm hoping to reserve four minutes for my co-counsel for okay well you're it's up to you yeah may it please the court if you use his time he's going to be mad at you john beast on behalf of the federal defendants uh I have four minutes for my co-counsel for the tribal intervenors it's important to understand the context of this case this case is about a challenge the united states management of the united states land congress said that the public can use and even exploit that land in certain circumstances but directed the president to protect and conserve objects of historical or scientific interest on the lands and that kind stewardship is what the proclamations here do the primary effect of the proclamations is simply to reserve the lands from entry under the public lands laws mineral entry things like that unless congress acts and says otherwise so are you are you arguing today to uphold the district court's position that there's um absolute sovereign immunity and that the proclamation can't be challenged we think there are multiple threshold issues with the plaintiff's claims here we think there is not a waiver of sovereign immunity okay so so the answer is yes as to the first one okay so district court saying it doesn't matter what the president put in there it's unreviewable uh there's sovereign immunity right okay so you're okay go ahead right we think there's a there and we also think there's no cause of action we think there's a standing issue and we think at the end of the day the court can't kind of intrude on the president's discretionary decision making anyways okay let me i'm sorry let me ask you this real fast so you say i thought you said there's no cause of action because there's a standing issue there's no cause of action and there's a standing issue okay go ahead sorry and just to be clear we think the cause of action is a discrete issue they've acknowledged there's no cause of action under this statute itself they're essentially calling on the court to use this equity powers and in that sense it's really effectively like a pre-apa administrative challenge and if you look back to those cases they weren't the same as the apa the apa is a very generous review provision as the court describes in cases about the how the general interest uh is that how you distinguish sim up the the balance reliance on that case can you can you speak to that a little bit on the cause of action issue so in our view under for like a general equity cause of action you need to have an invasion of a legally protected right and that's either a right traditionally protected at equity under common law like a property right a contract right right against tortious interference or it has to be a right granted by positive law by the statute itself giving them a privilege that the congress intended to be judicially enforceable and that's how cases pre-apa cases operated if you look at for instance uh tennessee electric power company versus tba 306 us 118 that's a case from before the apa they said exactly that you need to either have a statutory privilege in the statute you're trying to enforce or you need to have a right traditionally protected at equity in 1789 those types of issues they don't have any of that here they're saying an article three injury is all you need to undertake a general equity review of statutory compliance and that effectively dilutes that kind of equity review to the point where it's even broader than apa review then what do we do with the with the language in uh in sim up that says equity provides the basis for relief the cause of action so to speak in appropriate cases within this court's jurisdiction in appropriate cases in a case where there is that type of injury and i believe if i recall the injury there was a constitutional issue with the treatment of a prisoner so it's the distinction that are you suggesting that we distinguish sim up by saying there the the equitable cause of action was anchored in the enforcement of the eighth amendment yes and in the and in the fact that not just that it was constitutional but the eighth amendment gives rights in particular to the to the prisoner so that he has a type of right that's protected by positive law that you can enforce in equity but they don't have that type of legal injury here why didn't safe streets cite sim up uh you'd have to ask judge briscoe but i understand i think if you read safe street effectively dispositive about the cause of action issue here because it says you need substantive rights under the federal statute you're trying they don't have that there's no substantive rights they have under the antiquity antiquities act here and they're trying to ask this court to use this general equity power in a way that's they might have a grievance but they don't have that kind of legal injury that's called for by the by the kind of tradition of these old apa cases it's important they want you to take kind of a 21st century perspective of something that's really governed by how courts treated equity actions long before there was an apa and they want you to kind of import those more generous kind of arbitrary and capricious review standards that congress granted for some agency actions into actions where it's not supposed to apply so i i think it's problematic from the cause of action perspective so can i can i return to the sovereign immunity question uh let's say the president declared the entire state of utah to be a national monument would that be a proclamation that would be subject to ultra virus review i think setting aside the issue i would say i think that would because the president by law has no authority to proclaim state land or private land but that would require a court then to make a determination perhaps a factual and a legal one regarding land ownership right right but i think there's no argument there's no reasonable argument that the president has that kind of authority and that's the type of issue where ultra virus is supposed to apply i don't think it collapses into the merits because i think routine disputes of interpretation or you know is there a did the president abuse his discretion in deciding one thing as an object or another i think that kind of like granular review is not what it's meant for it's meant for where there's a plain the president plainly misconstrues the statute if there's a statutory prohibition on monuments in the state of wyoming if the president were to declare one in wyoming that would clearly be ultra because he doesn't have authority you know my question hits that sort of the land ownership aspect in section a of the statute the same place the same subsection where you find objects there you know those terms are not defined in the statute so you're suggesting we could draw the line to say that when the president decides certain things are objects and that they have historical or scientific interest that that's not reviewable on the other hand if the president were to declare land that's not federally owned again we'd have to some court would maybe have to make that finding that that would be subject to judicial review right i think if you look at the ultraviolet cases they use language like patently misconstrues the act or disregards a specific and unambiguous statutory command or violates specific statutory directive it's essentially meant to be for situations that historically we would have called writ of mandamus situations where it's plain and obvious that and not what historical courts looked at as kind of a writ of error where they've reviewed every determination of law or fact and it's for those kind of extreme circumstances where there's something so patently obvious that the court should intervene with its equity powers even when congress hasn't given that kind of authorized that kind of review it's for those kind of extreme circumstances extraordinary circumstances the case i'm not sure i understand how to reconcile what you told me about your cause of action position with your answer to judge federico's question maybe i'm missing something it seems that if there were some situation that could constitute uh an ultra various act under the antiquities act um maybe it's you know impossible to even think what that could be but let's assume there is something uh that that could be reviewable by a court which would then require i suppose a cause of action in equity so i to be clear i wasn't suggesting they would have a cause of act you'd need a plaintiff with a proper cause of action still in an ultra altruistic act would just solve the sovereign immunity problem you would still need a cause of action so you'd need a plaintiff who has that kind of traditional injury and equity or has some positive some right under positive law under the statute so so what if you had a landowner that had a three acre in holding that was mistakenly picked up in this designation right they would have a they would have a property interest which is a interest traditionally protected in equity so they would have a cause of action and then if it was also ultra virus because it was plainly beyond the president's authority then they would have a waiver of sovereign immunity they have neither of those things here so does the does the fact that the state of utah has well i mean you're picking you're picking up some mineral interest owners in this proclamation aren't you so all valid existing rights are preserved so if someone has a existing mineral claim prior to the proclamation in the land that's reserved that right is preserved but you're taking some of the bundle of sticks away from them because you're placing additional requirements on them that weren't there before the designation right and if if someone had a ripe claim involving those requirements they would have standing they would have a cause of action the only issue would be then the final issue the Dalton issue of how much the court could intrude into the kind of president's discretionary determinations but that that person once they have a right issue if their blm came in and actually charged them a fee it reached that where it was ripe they would have an issue but we've none of the plaintiffs in either the cases here have that kind of ripe issue right now so have any of the any of the portions of the management plan been enforced against any any county state entity or private landholder so the the lands that issue the restored lands are still managed under the existing regional resource management plans that were in place prior to the proclamations that will change soon soon there will be new management plans for the monuments and those will impose may impose requirements if they don't this is a whole hullabaloo about nothing if they do there will be someone at that point who has a ripe claim and the only question will be under the apa once an agency takes some action under those new management plans that injures them the only question then would again be the Dalton question about how much you can intrude into the president's discretion but that would solve all the other issues the claims here are very premature so they don't have that kind of ripe issue from the you know from new management monuments they don't point to things that involve changes that have happened because the proclamations agency actions have been taken since the proclamations so do the states have any cognizable interests in the lands that have been designated so these are united states lands so they don't have a legally protected interest in how the united states decides to manage its own lands they have you know some incoate interest in kind of they have police powers in the lands and they have a right to exercise them and things like that but they don't have a right to govern how the united states under like a general right they have flip my gives them certain coordination rights in sorry the federal land management policy act so in in your position that they would have no no right to enforce their police powers within the federal lands if if the federal government chose to not allow them if the president created a federal enclave and said that this is subject to i mean i think they would still have just like they have at the pentagon if someone is murdered at the pentagon they can still investigate that as a as a state crime murder crime but but they could choose not to yeah okay i see uh fair enough defer to my colleague thank you your honors and may it please the court matthew campbell on behalf of the tribal nations and i'll just make two quick points i know there's some interest in the question about the overlap between uh sovereign immunity the ultra viras and the merits and i think if you look at the supreme court's decision in larson at 337 us at 690 you'll see that the court said there may quote may be overlap between ultra virus question or the excessive authority and the merits but i think this court pointed out in wyoming versus the united states 279 f3d at 12 30 that the ultimate question of ultra viras and the merits or whether there's an incorrect decision as a matter of law are distinct questions the way i've come to think about the ultra virus issue is i think going back to larson again when you look at page 695 of larson the court there equated it and gave an example of jurisdiction right so when a court has jurisdiction just because it decides an issue incorrectly doesn't mean it didn't lack jurisdiction so that was the example the court gave in larson and when you think about it in those terms the district court's is actually not that out of line uh with that line of thinking right the court found that the president did not lack authority it was within his jurisdiction to reserve federal lands and therefore um ultra virus was unavailable um the the courts are sometimes circular on this question though and as larson noted it may depend on the merits i think the district court as as judge carson rightly noted did not rule on the merits and so if the court were to get to the and and the district court to take it up in the first instance the second point i would make is just that your honor when you look at the proclamations they identify many historic landmarks structures and objects of immense importance to the tribal nations their history and who they are as a people whether it's kivas dwellings granaries petroglyphs ancient roads there are numerous historic objects and sites that are identified and when you compare that with house report number 59-2224 which was drafted in 1906 you'll see a lot of similarities right that house report identified cottonwood creek butler wash comb rash many places within the bearsers region that that congress understood deserved protection it identified dwellings uh communal houses burial mounds all these different sites um so when you look at these two things together i think you'll see that even the original congress understood many of the places within bears ears within grand staircase were within the jurisdiction or the authority of the president to protect and that really answers that ultra virus question finally as the proclamation what about the designation yes sir what about the designation of animals you talk about the things that they were considering is there any evidence that they were considering or any any documents that they were considering animals yes your honor well i think when you think about scientific objects but really i think the supreme court in capert has answered that question when it reserved devil's hole right when you think about the desert pup fish all the the land and habitat that goes with that the court recognized it was within the president's jurisdiction or authority uh to we're going to go ahead